# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**RAUL PARRILLA,**

    **Petitioner,**

**v.**                                                             **Case No. 5:22-cv-209-WFJ-PRL**

**SECRETARY, DEPARTMENT OF
CORRECTIONS, and FLORIDA
ATTORNEY GENERAL,**

    **Respondents.**
_____/

## ORDER

Raul Parrilla, a Florida prisoner, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). At the Court's direction, Respondents filed a response to the petition and relevant portions of the state court record. (Doc. 10). Mr. Parrilla did not reply and his time to do so is expired. Thus, the petition is ripe for review. Upon consideration, the petition is due to be dismissed. Because the Court may resolve the petition based on the record, an evidentiary hearing is not warranted. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 8(a).

## I. BACKGROUND

On April 21, 2017, a state court jury found Mr. Parrilla guilty of one count of robbery with a firearm. (Doc. 10-1 at 137, 168). On August 4, 2017, the state trial court sentenced Mr. Parrilla to a 10-year minimum, 25-year maximum term of

imprisonment. (Doc. 10-1 at 171). Mr. Parilla's counsel appealed by filing an *Anders* brief.[1] (Doc. 10-1 at 176, 1056–69). The Fifth District Court of Appeal (Fifth DCA) *per curiam* affirmed. (Doc. 10-1 at 1071, 1073).

Mr. Parrilla moved to correct a sentencing error under Florida Rule of Criminal Procedure 3.800(b)(2). (Doc. 10-1 at 1030–33). The postconviction court denied the motion. (Doc. 10-1 at 1051–52). Mr. Parrilla moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 10-1 at 1083–1100). The state postconviction court held an evidentiary hearing and denied the motion. (Doc. 10-1 at 1111–65). Mr. Parrilla appealed and the Fifth DCA *per curiam* affirmed. (Doc. 10-1 at 1620–21, 1690). Parilla moved for a rehearing and the Fifth DCA denied the motion. (Doc. 10-1 at 1692–1711, 1713, 1715). Mr. Parrilla filed his petition for writ of habeas corpus in this Court on April 25, 2022. (Doc. 1).

## II.  LEGAL STANDARDS

### a. The Antiterrorism and Effective Death Penalty Act

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal habeas corpus petition. *See* 28 U.S.C. § 2254; *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Under the AEDPA, habeas relief can be granted only if an applicant is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Specifically, § 2254(d) provides that federal

---

[1] An *Anders* brief is filed by counsel when their client wishes to appeal but they believe the appeal is wholly frivolous. *See Anders v. California*, 386 U.S. 738, 744 (1967).

2

habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable,

3

and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 596 U.S. 118, 135 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioner[']s factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even when a petitioner succeeds in rebutting the presumption, he must show that the state court's decision was "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because

4

a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id*. (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

**b. Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. But "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

A petitioner must also show that their counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

5

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## III.   DISCUSSION

### a.  Ground One

Mr. Parrilla argues that the postconviction court violated his Sixth and Fourteenth Amendment rights when it denied his motion to appoint counsel to represent him in his postconviction proceedings. (Doc. 1 at 11–13). Respondents argue that there is no right to appoint counsel in postconviction proceedings and the postconviction court followed the proper Florida law procedures when denying Mr. Parrilla's motion to appoint counsel. (Doc. 10 at 11–16). Mr. Parrilla raised this issue for the first time when appealing the denial of his Rule 3.850 motion. (Doc. 10-1 at 1625–26, 1643–47). The Fifth DCA *per curiam* affirmed the denial of Mr. Parrilla's Rule 3.850 motion. (Doc. 10-1 at 1690).

There is no constitutional right to counsel in state postconviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 756 (1991) (citation omitted). Further, defects in state collateral proceedings are not a cognizable basis for federal habeas relief. *Carroll*, 574 F.3d at 1365 ("The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment[.]") (citation omitted). Therefore, Mr. Parrilla is not entitled to relief on Ground One.

### b. Ground Two

Mr. Parrilla argues that his trial counsel was ineffective for failing to advise him about the facts of his case "resulting in the loss of a favorable plea agreement." (Doc. 1 at 14–18). Respondents argue that Mr. Parrilla's trial counsel was not ineffective because he adequately advised Parrilla regarding the plea offer. (Doc. 10 at 16–17).

Mr. Parrilla raised this issue for the first time in his Rule 3.850 motion. (Doc. 10-1 at 1083–86). The postconviction court held an evidentiary hearing on the motion. (Doc. 10-1 at 1111–53). During the hearing, Mr. Parrilla testified that: his trial counsel gave him a plea offer in April 2016 that he had in his possession until the offer expired in June 2016; counsel told him he had two months to accept the offer; counsel never discussed the offer with him and instead only said "everything will be alright"; he decided to go to trial because counsel told him he had a "good case"; if counsel told him about the evidence "stacked" against him, he would have taken the plea offer. (Doc. 10-1 at 1116, 1118–19). Mr. Parrilla also admitted that the state trial court advised him of the maximum sentence he was facing multiple times; he read the offer

and understood that the thirteen years offered was less than his possible sentence; and that he understood that the decision of whether to plead or go to trial was his decision alone. (Doc. 10-1 at 1131–33). Trial counsel testified that he discussed the pros and cons and evidence of the case numerous times with Mr. Parrilla; discussed the plea offer and sentencing range with Mr. Parrilla; answered Mr. Parrilla's questions; and never gave any guarantees that he had a "good case" or that "everything would be alright." (Doc. 10-1 at 1141–45). Trial counsel also testified that Mr. Parrilla seemed to understand their discussions and the sentencing range but did not want to take the plea agreement because he "didn't want to take any lengthy prison offers[,]" and instead "wanted to go to trial." (Doc. 10-1 at 1142–43).

The postconviction court applied *Strickland* and denied the motion. (Doc. 10-1 at 1154–65). The postconviction court found that Mr. Parrilla's claim that his trial counsel did not discuss the plea agreement with him was directly refuted by his counsel's credible testimony during the evidentiary hearing. (Doc. 10-1 at 1158). The postconviction court also noted that the credibility of Mr. Parrilla's testimony was "greatly diminished" by his admission that he was "'not really' familiar with the contents of his [Rule 3.850] motion." (Doc. 10-1 at 1158). The Fifth DCA *per curiam* affirmed the postconviction court's ruling. (Doc. 10-1 at 1690).

The postconviction court's finding that trial counsel's testimony directly refuted Mr. Parrilla's contention that counsel did not discuss the State's plea offer with him, is a factual determination afforded a presumption of correctness. *See Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1272 (11th Cir. 2020) ("The credibility of a witness

8

is a question of fact entitled to a presumption of correctness under AEDPA."); *Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1292 (11th Cir. 2016) ("[f]ederal habeas courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); *Consalvo v. Sec'y, Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("We consider questions about the credibility and demeanor of a witness to be questions of fact."). Mr. Parrilla does not present any evidence to rebut the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1) (habeas petitioners "have the burden of rebutting the presumption of correctness by clear and convincing evidence").

It is uncontested that Mr. Parrilla had the plea offer in his possession for two months and knew of the offer, his potential maximum sentence, and that the decision of whether to take the offer or proceed to trial was his. Mr. Parrilla does not identify a specific fact or piece of adverse evidence of which counsel failed to advise him that would have changed his mind regarding whether to plea. Mr. Parrilla's conclusory allegation that his counsel never discussed the plea offer or the evidence "stacked" against him, without more, is insufficient to demonstrate his counsel's unreasonable representation or prejudice. *See Cuevas v. United States*, 2012 WL 1883761, at *6 (M.D. Fla. May 22, 2012) (a petitioner's "after the fact testimony concerning his desire to plead, without more," is insufficient to establish prejudice).

Mr. Parrilla fails to show that the state postconviction court's decision was contrary to clearly established federal law, involved an unreasonable application of

*Strickland*, or was based on an unreasonable factual determination. Therefore, Mr. Parrilla is not entitled to relief on Ground Two.

**c. Ground Three**

Mr. Parrilla argues that his trial counsel was ineffective "for failing to accept a mistrial when" the State's witness "Chele Johnson testified using inadmissible and highly prejudicial statements." (Doc. 1 at 19–22). Respondents argue that counsel was not ineffective because Ms. Johnson's testimony was not so harmful as to merit a mistrial. (Doc. 10 at 17–21).

During the trial, Mr. Parrilla's girlfriend Chele Johnson testified about her involvement in the robbery for which Parrilla was convicted. (Doc. 10-1 at 703–19, 724–805). A man came to a hotel under the guise of meeting Ms. Johnson for sex. (Doc. 10-1 at 713–15). Shortly after he arrived, Mr. Parrilla and others robbed him. (Doc. 10-1 at 713–15). At least six people were involved in the robbery in some capacity. (Doc. 10-1 at 712). Trial counsel asked Ms. Johnson if anyone planned to hide from the police in one of the hotel rooms. (Doc. 10-1 at 776). Ms. Johnson responded that she heard someone mention that Raffi—Mr. Parrilla's brother and co-defendant—and Raffi's girlfriend Brittany were going to get a room at the hotel to hide out "if he got caught for robbing something one day[.]" (Doc. 10-1 at 712, 776). Mr. Parrilla's trial counsel tried to impeach Ms. Johnson with a prior inconsistent statement she made to police. (Doc. 10-1 at 776–79). When confronted with her prior statement, Ms. Johnson clarified that: "I said they planned on hiding there one day. I didn't say it was for the night of the robbery, though. I said about the previous

10

robberies that they had been doing that if they had to hide there one day after they robbed." (Doc. 10-1 at 779). Trial counsel immediately objected and moved to strike, and the line of questioning ended. (Doc. 10-1 at 779).

In another line of questioning, Ms. Johnson testified that she was afraid that Mr. Parrilla would send people after her. (Doc. 10-1 at 793–95). On recross, Mr. Parrilla's trial counsel asked Ms. Johnson if Mr. Parrilla sent people after her. (Doc. 10-1 at 795). She began to answer, "he sent someone to my house," but was cut off by the trial court when it called counsel to the bench and asked, "do you want to mistry the case right now?" (Doc. 10-1 at 795). The court then went on to say, "it [mistrial] hasn't happened yet, but it's about to." (Doc. 10-1 at 795). Trial counsel explained that he was attempting to elicit testimony from Ms. Johnson that she never reported any threats to the police, to undermine her credibility. (Doc. 10-1 at 795–76). Because counsel did not know how Ms. Johnson would answer the question, the court sent the jury away for counsel to ask the question outside the jury's presence. (Doc. 10-1 at 795–97). Ms. Johnson stated that Mr. Parrilla sent people to "bust down" her door and retrieve his firearms. (Doc. 10-1 at 797–99). Trial counsel did not reinitiate the line of questioning in front of the jury. (Doc. 10-1 at 800–01).

Mr. Parrilla takes issue with two statements by Ms. Johnson: the statement about "previous robberies" and the statement that Mr. Parrilla sent people after her. (Doc. 1 at 20). Mr. Parrilla claims the statements were inadmissible prior bad acts and

11

justified a mistrial.[2] (Doc. 1 at 20–21). Mr. Parrilla raised this issue for the first time in his Rule 3.850 motion. (Doc. 10-1 at 1087–89). The postconviction court held an evidentiary hearing on the motion. (Doc. 10-1 at 1111–53). The postconviction court applied *Strickland* and denied the motion. (Doc. 10-1 at 1158–61). The postconviction court found that Ms. Johnson's testimony discussed what Raffi and Brittany were planning to do in the future, not what Mr. Parrilla did in the past, and noted that the trial court did not "invite" counsel to move for a mistrial but rather warned counsel that he was on the verge of causing a mistrial. (Doc. 10-1 at 1160). The court concluded that neither statement provided a sufficient basis to move for a mistrial. (Doc. 10-1 at 1161). The Fifth DCA *per curiam* affirmed the postconviction court's ruling. (Doc. 10-1 at 1690).

Regarding the first statement, under Florida law, evidence of "other crimes, wrongs, or acts" is "admissible when relevant to prove a material fact in issue," "but [] is inadmissible when the evidence is relevant solely to prove bad character or propensity." Fla. Stat. 90.404. When Ms. Johnson made the "previous robberies" comment, she was discussing Raffi and Brittany's plan to hide in the hotel, not Mr. Parrilla. The postconviction court's determination that the testimony did not allude to Mr. Parrilla's prior bad acts was reasonable because Mr. Parrilla was not implicated in this line of questioning. Thus, counsel cannot be ineffective for failing to

---

[2] Prior to trial, Mr. Parrilla's trial counsel filed a motion in limine to exclude testimony by Ms. Johnson of Mr. Parrilla's "other acts" committed in the Virgin Islands and "other possible robberies." (Doc. 10-1 at 1159).

12

move for a mistrial on this basis. *See Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739, 755 (11th Cir. 2011) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit") (quoting *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990)).

Regarding the second statement, when the trial court asked trial counsel if he wanted to mistry the case, it was not making a genuine offer to move for a mistrial as Mr. Parrilla contends. (Doc. 10-1 at 1160). The trial court was instead asking counsel if he wanted to mistry the case in a rhetorical fashion. (Doc. 10-1 at 1160). This is evidenced by the fact that the trial court went on to say: "it [a mistrial] hasn't happened yet, but it's about to." (Doc. 10-1 at 1160). This Court must defer to the state trial and postconviction courts' findings that there was no basis for a mistrial in this case. *See Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997) ("state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters[]"). Further, it is hard to imagine that the trial court would have granted trial counsel's motion for a mistrial in that moment when it just said that a mistrial had not yet happened. Because there was no basis for a mistrial, counsel cannot be ineffective for failing to move for one. *See Cave*, 638 F.3d at 755 (*Card*, 911 F.2d at 1520).

Moreover, the fact that trial counsel *almost* caused a mistrial, but was stopped by the trial court, is not a basis to grant federal habeas relief. Because the basis for a mistrial did not materialize, Mr. Parrilla cannot show that he was prejudiced by his trial counsel's actions. *See Strickland*, 466 U.S. at 687 (a habeas petitioner must show both unreasonable performance and prejudice to demonstrate ineffective assistance of counsel).

13

Mr. Parrilla fails to show that the state postconviction court's decision was contrary to clearly established federal law, involved an unreasonable application of *Strickland*, or was based on an unreasonable factual determination. Therefore, Mr. Parrilla is not entitled to relief on Ground Three.

### d. Ground Four

Mr. Parrilla argues that his trial counsel was ineffective for failing to investigate and move to suppress a statement he made to Officer George Hunley. (Doc. 1 at 23–25). Respondents argue that Counsel was not ineffective because he correctly determined that there was no basis to suppress the statement. (Doc. 10 at 21–23).

Officer Hunley was asked to assist in transporting Mr. Parrilla to jail after his arrest. (Doc. 10-1 at 1162). Mr. Parrilla asked Officer Hunley to use the restroom. (Doc. 10-1 at 1163). While walking to the restroom, Mr. Parrilla asked Officer Hunley a question that was captured on Hunley's body camera. (Doc. 10-1 at 1163). Mr. Parrilla claims that he asked Officer Hunley whether the police found "*any* gun." (Doc. 1 at 23–24). Officer Hunley testified that Mr. Parrilla asked if the police "had found *his* gun" (Doc. 10-1 at 812). Officer Hunley's body camera footage was played for the jury during which Mr. Parrilla could be heard saying "they still got my gun in there?" (Doc. 10-1 at 812–13). On cross examination, Mr. Parrilla's trial counsel asked Officer Hunley if he may have misunderstood what Parrilla said. (Doc. 10-1 at 814). Although Officer Hunley said, "not from what I remember hearing," he admitted that

14

Mr. Parrilla's English is broken.[3] (Doc. 10-1 at 814). Mr. Parrilla now claims that his counsel should have hired an audiovisual expert to decipher the statement, and if he did, that would have resulted in the statement being suppressed. (Doc. 1 at 24).

Mr. Parrilla asserted this ground in his Rule 3.851 motion. (Doc. 10-1 at 1092–95). The postconviction court applied *Strickland* and denied the motion finding there was no basis to suppress the statement because it was not the product of police interrogation, and counsel reasonably addressed the potential inaccuracy of the statement during cross examination. (Doc. 10-1 at 1162–64). The Fifth DCA *per curiam* affirmed the postconviction court's ruling. (Doc. 10-1 at 1690).

To demonstrate an ineffective assistance of counsel claim based on counsel's failure to file a motion to suppress, Mr. Parrilla must demonstrate a "valid basis [] for suppression of his statements[.]" *Root v. Dep't of Corr.*, 2021 WL 82857, at *8 (M.D. Fla. Jan. 11, 2021) (citing *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006)). Mr. Parrilla does not put forth a valid basis for suppressing the statement. Mr. Parrilla was not being interrogated when he made the statement, and thus, the statement was not taken in violation of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (*Miranda*'s protections only apply when the speaker is subject to custodial interrogation, i.e., "questioning initiated by law enforcement officers"); *see also Rhode Island v. Innis*, 446 U.S. 291 (1980) ("the definition of interrogation can extend only to words or actions on the part of police officers that they should have

---

[3] Conversely, during the evidentiary hearing on Mr. Parrilla's Rule 3.850 motion, Mr. Parrilla testified that he does not have trouble speaking English. (Doc. 10-1 at 1126).

15

known were reasonably likely to elicit an incriminating response[]") (emphasis omitted). Officer Hunley was not prohibited from "merely listening" to Mr. Parrilla's incriminating question. *See Edwards v. Arizona*, 451 U.S. 477, 485 (1981); *United States v. Briggs*, 273 F.3d 737, 740 (7th Cir. 2001) ("A police officer's response to a direct inquiry by the defendant does not constitute 'interrogation.'").

Further, it is not clear what an expert could have done to help establish that the statement or video should have been suppressed. Trial counsel's decision regarding whether to retain an expert is a strategic decision entitled to a presumption of correctness. *Wiggins v. Smith*, 529 U.S. 510, 521 (2003). Under Florida law, expert testimony is "scientific, technical, or other specialized knowledge [that] will assist the trier of fact in understanding the evidence or in determining a fact in issue." Fla. Stat. 90.702. This was a factual dispute that was appropriately left to the jury to decide after hearing the video, Officer Hunley's testimony, and counsel's cross examination of Officer Hunley. Mr. Parrilla's conclusory allegation that an expert could have "decipher[ed] the actual content of" his statement does not overcome the presumption of correctness afforded to his trial counsel's decision. (Doc. 1 at 24).

Mr. Parrilla's disagreement over what he said to Officer Hunley is not a basis to exclude the statement. The purpose of the exclusionary rule is to punish wrongful officer conduct, but there was no wrongful conduct here. *See Withrow v. Williams*, 507 U.S. 680, 686–87 (1993). Because there was no basis to suppress Mr. Parrilla's statement to Officer Hunley, his trial counsel cannot be ineffective for failing to file a motion to suppress. *See Cave*, 638 F.3d at 755 (*Card*, 911 F.2d at 1520). Mr. Parrilla

fails to show that the state postconviction court's decision was contrary to clearly established federal law or involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Therefore, Mr. Parrilla is not entitled to relief on Ground Four.

e. **Ground Five**

Mr. Parrilla argues that even if Grounds Two, Three, and Four do not individually amount to ineffective assistance of counsel, they do cumulatively. (Doc. 1 at 26–28). Respondents argue there can be no cumulative error because Mr. Parrilla's individual claims are meritless. (Doc. 10 at 23). Mr. Parrilla asserted this ground in his Rule 3.851 motion. (Doc. 10-1 at 1097). The state postconviction court denied Mr. Parilla's claim finding that he suffered no cumulative error because none of his individual claims were legally sufficient. (Doc. 10-1 at 1164). The Fifth DCA *per curiam* affirmed the postconviction court's ruling. (Doc. 10-1 at 1690).

As this Court already found, trial counsel did not render ineffective assistance in Grounds Two, Three, or Four, and thus, there can be no cumulative error. *See United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011) ("[w]here there is no error or only a single error, there can be no cumulative error"). Mr. Parrilla fails to show that the state postconviction court's decision was contrary to clearly established federal law, involved an unreasonable application of *Strickland*, or was based on an unreasonable factual determination. Therefore, Mr. Parrilla is not entitled to relief on Ground Five.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Mr. Parrilla's petition for writ of habeas corpus (Doc. 1) is meritless. Therefore, the petition is dismissed with prejudice. The Clerk is instructed to enter judgment accordingly, terminate any pending motions, and close the file.

In addition, a certificate of appealability is denied. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a showing, a plaintiff "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (internal citation and quotation omitted). Alternatively, a plaintiff must demonstrate that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation and citation omitted). Mr. Parrilla has not made the requisite showing. Because Mr. Parrilla is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis at this time.

**DONE AND ORDERED** in Tampa, Florida, on August 26, 2025.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:**
Counsel of Record
Raul Parrilla, pro se